IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ROBERT HADLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL CASE NO. 1:20-cv-733-ECM |
| ) | (WO) |
| COFFEE COUNTY COMMISSION, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

**I.   Introduction**

Plaintiff Robert Hadley ("Hadley") brings claims of religious discrimination, a hostile work environment, and unlawful retaliation, all in violation of Title VII of the Civil Rights Act of 1964, against his former employer, Defendant Coffee County Commission ("County"). Now before the Court is the County's Motion for Summary Judgment. (Doc. 38). For the reasons below, the motion is due to be GRANTED.[1]

---

[1] Also pending before the Court is the County's Motion to Strike Certain Evidentiary Submissions. (Doc. 48). Because the Court here rules on the County's substantive motion for summary judgment on procedural grounds that do not implicate the disputed evidence, the Court need not rule on that motion first.

## II.  Background[2]

The Coffee County Commission is the governing body of Coffee County, Alabama, established pursuant to ALA. CODE § 11-1-2. In 2014, the County hired Hadley as an electrician and plumbing technician. Hadley, Jewish by ethnicity and religion, worked his way to the position of Assistant Maintenance Superintendent. In that role, Hadley traveled throughout the county, repairing plumbing and electrical problems in county buildings, and oversaw a small staff of other technicians. While there, Hadley was supervised by Maintenance Superintendent Todd Rugg, and after Rugg's retirement, by Ron Scroggins.

Beyond those broad contours, the parties here disagree on the bulk of the relevant details. According to Hadley, in 2015 he began encountering pervasive anti-Semitism in the workplace. In his telling, his coworkers repeatedly mocked his Jewish ethnicity and religion, some going so far as to declare that they could not work under him because he was Jewish. Hadley describes incidents involving his subordinates, his superiors, and his peers, painting a portrait of a workplace deeply infested with anti-Semitic behavior. Hadley also describes reporting several of these incidents to Rugg and other supervisors, but being met with inaction, or with a warning to keep his head down as those complaining often found themselves terminated. In Hadley's mind, his complaints of anti-Semitism to Rugg fell on unsympathetic ears: Hadley purports to show that both Rugg and Scroggins are covered in anti-Semitic, white supremacist tattoos. He also

---

[2] Since this comes before the Court on the Defendant's motions for summary judgment, the Court construes the facts in the light most favorable to the non-movant, Hadley, and draws all justifiable

2

believes that he was not promoted to Maintenance Superintendent because Rugg and Scroggins gave him bad reviews due to their personal animosity towards Jews. The County disagrees on all points—that the events occurred, that Hadley ever reported them in the manner he claims, that Rugg and Scroggins have white supremacist tattoos, or that Hadley did not receive a fair evaluation.

The parties do agree, however, that during his employ, Hadley was required to fill out daily activity sheets that logged his location, hours, and activities. On April 1, 2019, Hadley recorded that he spent four overtime hours working at the Coffee County Jail to fix a leaky toilet. Then, on April 7, 2019, Hadley recorded that he spent another four overtime hours at the jail, this time to repair what was purported to be a leaking roof. Finally, on April 8, 2019, Hadley recorded that he returned to the jail to shut down a frozen air conditioner and clean up a water leak.

The parties disagree whether those recordings are accurate. The County believes that they are not: it asserts that Hadley never went to the jail on April 1 or April 7. According to the County, on April 1, Hadley went only to the County's maintenance shop, could not find the valve he knew he needed to repair the toilet, and so went home. Hadley then, says the County, found the valve the next morning and subsequently repaired the toilet. Similarly, the County asserts that Hadley never visited the jail on April 7, but rather arrived there for the first time on April 8, where he found the frozen air conditioner and a large amount of water on the floor.

---

inferences in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Hadley contends that his activity sheets are accurate as reported, and any statement he made to the contrary is a misunderstanding. Hadley asserts that on April 1, Hadley visited the jail's maintenance shed, a separate building, only to realize the shed lacked the needed valve. He then climbed a ladder into the jail's attic space to cut the toilet's water lines and to clean up the leak. Neither of those locations, says Hadley, constituted the physical *jail*, but he says that nevertheless, he performed the required maintenance work. He tells the same story about April 7: that he climbed a ladder into the attic, where he found the frozen air conditioner unit that he subsequently disabled. Hadley expected the unit to thaw overnight, necessarily spilling additional water onto the attic's floor.

Both parties do agree, however, that on April 8, Hadley contacted Scroggins, who, as the County's resident air conditioner expert, visited the jail himself to survey the problem. That investigation precipitated Hadley's eventual termination. Scroggins, upon arrival, found what he believed to be too much water to possibly accumulate in a single evening (*i.e.*, between Hadley's supposed visit on April 7 and his return on April 8). Scroggins suspected that the area had not been checked in some time and told County Engineer Marty Lentz so. Lentz requested that the County Sheriff's Office review video footage from jail security cameras from April 1 through April 2, and from April 6 through April 7 to determine whether Hadley had visited the jail as reported. Review of the footage showed he had not. However, Hadley contends that the cameras were mislabeled, and so the proper cameras which would have shown his entrance were not reviewed.

4

Either way, at the end of April 2019, Lentz informed Hadley that he believed Hadley had falsified his activity sheets, and that so Hadley could either resign or be terminated. Hadley asked if he could be suspended instead, but Lentz declined. Left with few choices, Hadley resigned, noting at the bottom of his letter that he was being forced out because he has Jewish. After his resignation (or constructive termination, in Hadley's framing), Hadley contacted Rod Morgan, the County Administrator and Attorney, to complain of religious discrimination and to explain the activity sheet discrepancies. After Morgan did not assist, Hadley filed a charge with the EEOC in May 2019, alleging the same claims he now brings. On August 5, 2020, the EEOC issued Hadley a right-to-sue letter, informing him that it was dismissing his charges. Hadley then filed suit. After discovery, the County moved for summary judgment on all claims, the motion to which the Court now turns.

### III.   Jurisdiction

The Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1331. The parties do not contest personal jurisdiction or venue, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

### IV.   Analysis

A reviewing court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant can meet this burden by presenting evidence demonstrating there is no dispute of material fact, or by showing

that the non-moving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  Only disputes about material facts will preclude the granting of summary judgment. *Anderson*, 477 U.S. at 249.  "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. . . . An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248).

Once the movant has satisfied this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-movant must support his assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B).

In determining whether a genuine issue for trial exists, the Court must view all the evidence in the light most favorable to the non-movant. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).  Likewise, the Court must draw all justifiable inferences from the evidence in the nonmoving party's favor. *Anderson*, 477 U.S. at 255.  However, "mere conclusions and unsupported factual allegations are legally

6

insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam).

Hadley alleges three separate violations of Title VII: that he was discriminated against by reason of his religion; that he was subject to a hostile work environment; and that he was retaliated against for complaining to his superiors about the religious discrimination he was facing. To bring a claim under Title VII in federal court, a potential plaintiff must first exhaust administrative remedies. *Crawford v. Babbitt*, 186 F.3d 1322, 1326 (11th Cir. 1999) (citation omitted). That includes obtaining a "right-to-sue letter," which is usually issued by the EEOC, and which grants the potential plaintiff permission to pursue his claim in federal court. *See* 42 U.S.C. § 2000e-5(f)(1). However, if the potential plaintiff seeks to bring a Title VII suit against a "government, governmental agency, or political subdivision," (which the County here is), he must receive a right-to-sue letter from the United States Attorney General rather than from the EEOC. *Id.*[3]

---

[3] The statute states, in relevant part:

> If a charge filed with the Commission pursuant to subsection (b) is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d), whichever is later, the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, *or the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge* (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice.

42 U.S.C. § 2000e-5(f)(1) (emphasis added).

In its motion, the County argues that Hadley did not satisfy that prerequisite since he failed to obtain a right-to-sue letter from the Attorney General. Instead, Hadley's right-to-sue letter was issued by the EEOC. (*See* Doc. 1-1). At first read, that alone makes Hadley's claims improperly before the Court.

However, the requirement that the plaintiff receive a right-to-sue letter from the Attorney General is not jurisdictional, but merely a condition precedent to suit. *See Fouche v. Jekyll Island-State Park Auth.*, 713 F.2d 1518, 1525–26 (11th Cir. 1983). Thus, "in appropriate circumstances, courts may equitably modify or waive the requirement." *Keith v. Talladega City Bd. of Educ.*, 2021 WL 913481, at *7 (N.D. Ala. Mar. 10, 2021) (citing *Solomon v. Hardison*, 746 F.2d 699, 701–02 (11th Cir. 1984)). The Eleventh Circuit has blessed such a waiver where "the plaintiff diligently attempted to obtain the required notice, but the Attorney General has refused to issue it, or the plaintiff conclusively demonstrated that the Attorney General will not issue a right-to-sue letter because the [EEOC] has already issued one." *Langston v. Lookout Mountain Cmty. Servs.*, 775 F. App'x 991, 997 (11th Cir. 2019) (quotations omitted) (citing *Fouche*, 713 F.2d at 1526, and *Solomon*, 746 F.2d at 702). District courts have also waived the requirement when a plaintiff sues relying on an EEOC right-to-sue letter that did not otherwise indicate that a letter from the Attorney General was required. *See, e.g., Keith*, 2021 WL 913481, at *7; *Knott v. DeKalb Cnty. Sch. Sys.*, 2014 WL 10919525, at *13 (N.D. Ga. July 16, 2014).[4] It is the plaintiff's burden to prove that he has satisfied the

---

[4] Courts have often done so with an eye towards 29 C.F.R. § 1601.28(d). That regulation, in direct conflict with the text of 42 U.S.C. § 2000e-5(f)(1), specifies that in the case of a charge against a

conditions precedent to suit when the defendant denies that he has done so. *See, e.g.*, *Jackson v. Seaboard Coast Line R.R. Co.*, 678 F.2d 992, 1010 (11th Cir. 1982).

Hadley instead admits that his right-to-sue letter was issued by the EEOC rather than by the Attorney General. Therefore, he did not properly exhaust his administrative remedies before bringing his suit. Thus, to maintain his suit, Hadley needed to show that the equities weigh in his favor such that the Court should here waive the prerequisite that he failed to satisfy. *See Moore v. Ga. Dep't of Corr.*, 2014 WL 4776714, at *2 (S.D. Ga. Sept. 15, 2014) ("The Eleventh Circuit has held that the plaintiff bears the burden in arguing for equitable modification." (alterations adopted) (quotations and citation omitted)); *Braden v. Piggly Wiggly*, 4 F. Supp. 2d 1357, 1363 (M.D. Ala. 1998) ("The burden is on the plaintiff to show that equitable modification should apply[.]").

Hadley does not satisfy his burden. He does not address the County's argument in any capacity. He makes no attempt to argue that he deserves an equitable waiver, does not discuss 42 U.S.C. § 2000e-5(f)(1) or any regulations issued under that provision, and does not cite any cases involving the equitable waiver doctrine. He produces no evidence that he attempted to obtain a letter from the Attorney General but could not, or that the Attorney General refused to issue one. By failing to argue for an equitable waiver, Hadley falls out of step with other plaintiffs granted such waivers—they, at a minimum, attempted to show why they were entitled to one. *See, e.g.*, *Keith*, 2021 WL 913481, at *7

---

governmental respondent, when the EEOC determines that dismissal of the charge is appropriate (rather than, say, when the EEOC attempted, but failed in, a reconciliation), the *EEOC* will issue the right-to-sue letter. 29 C.F.R. § 1601.28(d). That is what occurred here. However, as noted below, Hadley does not discuss this regulation, or how it impacts the suitability of his case to an equitable waiver, in any way.

(distinguishing *Langston* because the plaintiff in that case failed to invoke the equitable waiver doctrine, whereas the plaintiff in *Keith* had).

The Court is not required to assert arguments for a party that he himself did not make. *See Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. . . . Rather, the onus is upon the parties to formulate arguments[.]" (citation omitted)).  Because Hadley failed to properly satisfy administrative prerequisites, and because Hadley does not otherwise demonstrate that he is deserving of an equitable waiver of those prerequisites, the Court finds that Hadley's claims are not properly brought, and so summary judgment is due to be granted to the County on all claims.[5]

### V.   Conclusion

Accordingly, and for good cause, it is

ORDERED that the Defendant's Motion for Summary Judgment (doc. 38) is GRANTED.  It is further

ORDERED that the Defendant's Motion to Strike (doc. 48) is DENIED as moot.

A separate final judgment will enter.

---

[5]  Hadley does nakedly assert that he "exhausted his administrative remedies when he filed a charge of discrimination" with the EEOC. (Doc. 44, para. 2).   Even if the Court, in the most generous of lights, were to construe that assertion as a rebuttal to the County's argument that Hadley failed to meet all the administrative prerequisites to bring his claim, the rebuttal is otherwise without citation or developed argument.   Hadley's failure to provide either waives the argument. *See, e.g., Patrick v. City of Birmingham*, 2010 WL 11468979, at *2 (N.D. Ala. Oct. 28, 2010) ("[T]he failure to reference any legal authority constitutes an undeveloped argument and waives the issue.").

DONE this 2nd day of May, 2022.

                                          /s/ Emily C. Marks
                                      EMILY C. MARKS
                                      CHIEF UNITED STATES DISTRICT JUDGE