IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ROBERT HADLEY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL CASE NO. 1:20-cv-733-ECM ) (WO) |
| COFFEE COUNTY COMMISSION, | ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

This is not a case about "another Auschwitz[.]" (Doc. 45 at 15). Nor is it a case about "mass shootings . . . happening almost daily[.]" (Doc. 60 at 3). It is a case about alleged discrimination in the workplace.

But, more immediately, it is a case about the proper roles, and respective duties, of the parties, parties' counsel, and the Court.

Some background helps. Plaintiff Robert Hadley ("Hadley") believes he was subjected to pervasive anti-Semitism during his employ with the Defendant Coffee County Commission ("County"). In his estimation, this anti-Semitism led to his eventual termination in early 2019. After the County's human resources department did not help, Hadley filed a charge with the EEOC. In late 2020, the EEOC dismissed Hadley's charges, and issued him a right-to-sue letter. That letter stated that Hadley could "file a lawsuit against [the County] under federal law based on [Hadley's alleged charges] in federal or state court." (Doc. 55 at 7). According to the letter, he had ninety days to file

that suit.  Hadley did so.  His suit against the County alleges several violations of Title VII of the Civil Rights Act of 1964.

But the letter's statement that Hadley could sue upon its receipt was not *entirely* accurate.  The steps a potential plaintiff must take before bringing a suit pursuant to Title VII are set out in part by statute.  42 U.S.C. § 2000e-5(f)(1), which imposes some of those requirements, states that:

> If a charge filed with the Commission pursuant to subsection (b) is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d), whichever is later, the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice.

The provision is not a model of clarity.  Nevertheless, courts have carved through the morass and concluded that when the charge involves "a government, governmental agency, or political subdivision," the "right-to-sue letter *must be issued by the United States Attorney General.*" *Fouche v. Jekyll Island-State Park Auth.*, 713 F.2d 1518, 1524 (11th Cir. 1983) (emphasis added) (quoting 42 U.S.C. § 2000e-5(f)(1)); *see also Keith v. Talladega City Bd. of Educ.*, 2021 WL 913481, at *6 (N.D. Ala. Mar. 10, 2021) ("But if the plaintiff wishes to sue a government, governmental agency, or political subdivision under Title VII, the plaintiff *must* first receive a right-to-sue letter *not from the EEOC,*

*but from the United States Attorney General.*" (emphasis added) (quotations and citation omitted)).

The County is, as most counties are, a governmental entity.  Thus, by the terms of the statute (as interpreted by the Eleventh Circuit), Hadley needed a letter from the Attorney General, rather than from the EEOC, to start his suit.  He did not get that letter.

But there's a wrinkle.  In a move that has confused litigants and courts "for more than 40 years," (*see* doc. 60-1 at 2), the EEOC decades ago promulgated 29 C.F.R. § 1601.28.  *Cf. Keith*, 2021 WL 913481, at *6 ("But an EEOC regulation injects confusion into this requirement).  That regulation states, in relevant part, that:

> In all cases where the respondent is a government, governmental agency, or a political subdivision, the *Commission* will issue the notice of right to sue when there has been a *dismissal* of a charge. The notice of right to sue will be issued in accordance with § 1601.28(e). In all other cases where the respondent is a government, governmental agency, or political subdivision, the Attorney General will issue the notice of right to sue . . . .

29 C.F.R. § 1601.28(d) (emphasis added).  The EEOC here explained to Hadley's counsel that because it *dismissed* Hadley's charges, "it is the Commission who has the authority to issue the Notice[,]" (doc. 60-1 at 1), and that it did so pursuant to that authority.  The EEOC further lamented "some courts['] reluctance to give appropriate deference to this regulation . . . ." (*Id.*).  Counsel was encouraged by the EEOC to share this relevant provision with the Court.  Counsel now does so.

The Court is, and was, aware of § 1601.28(d). (*See* Doc. 53 at 8 n.4 (discussing and citing 29 C.F.R. § 1601.28(d)).  The Court is also aware that § 1601.28(d)'s directive "directly contradict[s] the statutory language of 42 [U.S.C.] § 2000e-5(f)(1)." *Fouche*,

3

713 F.2d at 1524. As for the regulation's power, and any deference it may be owed by this Court, the tale begins and ends with the contradiction: "[i]f a regulation conflicts with a statute, the statute controls." *Cremeens v. City of Montgomery*, 602 F.3d 1224, 1227 (11th Cir. 2010) (citation omitted). Thus, notwithstanding the EEOC's regulation, and notwithstanding any letter from the EEOC to the contrary, courts in this circuit adhere to the statute's text and require plaintiffs to get letters from the Attorney General to sue governmental entities.

That result is, at first glance, deeply unfair. The EEOC continues to follow its contrary regulation and tell potential plaintiffs that a right-to-sue letter from the agency is all they need to continue their suits. Plaintiffs, trusting federal agencies to know the strictures of the laws they apply, believe the EEOC and bring suit all the same. Though under this Circuit's law, that remains improper, it is what happened here. (*See* Doc. 60; *see also* Doc. 53 at 8 n.4 (acknowledging that that is what happened here)). The County pointed this out from the beginning, denying in its answer that Hadley had satisfied his proper administrative prerequisites, and making that argument prior to any other in its motion for summary judgment.

But to end there is to overstate the burden that the prerequisite imposes on potential plaintiffs. Rather than throw out each of these improperly brought suits, courts instead offer plaintiffs a safety valve. Even if a plaintiff failed to get the proper letter, a court may *waive* the requirement if equity so demands. *See, e.g.*, *Fouche*, 713 F.2d at 1524–26 (equitably waiving the requirement); *Solomon v. Hardison*, 746 F.2d 699, 701–02 (11th Cir. 1984) (explaining that "the requirement . . . that a right-to-sue letter must be

4

issued by the Attorney General is not jurisdictional, but instead is subject to equitable waiver, modification, or estoppel"); *Langston v. Lookout Mountain Cmty. Servs.*, 775 F. App'x 991, 997 (11th Cir. 2019) (affirming a grant of summary judgment for a defendant because the plaintiff failed to acquire a letter from the Attorney General *and* failed to argue a waiver was appropriate under *Fouche* or *Solomon*).

The Eleventh Circuit has approved an equitable waiver of this requirement twice. First, in *Fouche*, the court held that a waiver was appropriate because the plaintiff had asked the Attorney General for a right-to-sue letter, and the Attorney General had explained that his department would not issue one. 713 F.2d at 1524–26.  Shortly thereafter, in *Solomon*, the court held that a waiver was appropriate on similar grounds— the plaintiff asked the Attorney General for his proper letter, and the Attorney General refused.  746 F.2d at 702.

While *Solomon* and *Fouche* comprise the entirety of published, Eleventh Circuit caselaw on the issue, courts have not stopped at their boundaries.  Rather, district courts in the circuit have acknowledged that nothing in *Solomon* or *Fouche* established that an unsuccessful attempt to obtain a right-to-sue letter from the Attorney General was "a *prerequisite* to equitable modification." *Knott v. DeKalb Cnty. Sch. Sys.*, 2014 WL 10919525, at *13 (N.D. Ga. July 16, 2014) (emphasis in original) (citations omitted). Without any such prerequisite, district courts are more forgiving.  They often waive the Attorney General right-to-sue letter requirement in situations where "a Title VII plaintiff, working under the understandable assumption that her receipt of a right-to-sue letter from the EEOC signaled the end of the administrative exhaustion process, merely filed suit

without receiving a right-to-sue letter from the Attorney General." *Keith*, 2021 WL 913481, at *7; *see also Knott*, 2014 WL 10919525, at *13 (granting a waiver where the plaintiff "filed a private Title VII action after receiving a letter from the EEOC which (however mistakenly) informed her of her right to do so, with no indication that she should attempt to obtain a similar letter from the Attorney General"); *English v. Ware Co. Dep't of Fam. & Child. Servs.*, 546 F. Supp. 689, 693 (S.D. Ga. 1982) (same); *Dillard v. Rumph*, 584 F. Supp. 1266, 1268 (N.D. Ga. 1984) (same).

Clearly, many courts grant equitable waivers in situations identical to Hadley's. And in many more identical situations, the issue is never raised—perhaps because of its obscurity, or because of the sheer ease of arguing for, and receiving, a waiver. (*Cf.* Doc. 55 at 5–6 (explaining that in almost 200 cases, many involving governmental entities, Hadley's counsel has never had this issue arise)). But this background, though vital for context, obscures a different and fundamental point: nowhere did the Court find that Hadley's situation *did not deserve a waiver*. The motions to alter appear to misunderstand this subtle distinction—they both implore the Court to alter its judgment by explaining that Hadley's letter gave no indication that he needed any notice from the Attorney General, and so his situation matched the many cases in which that, in and of itself, was sufficient for a waiver.

Hadley is correct. But his argument misses the thrust of the Court's order. Instead of finding, *contra Knott*, *Keith*, *English*, or others, that following the EEOC's directive was insufficient to entitle Hadley to a waiver, the Court's decision rested on a different point: Hadley failed to *meet his burden* to *demonstrate* that he deserved a waiver.

6

As the Court's order made clear, the County here properly argued that Hadley failed to satisfy Title VII's administrative prerequisites because he did not receive a letter from the Attorney General. Once the County challenged that Hadley had satisfied his administrative prerequisites, Hadley bore the burden "of proving that the conditions precedent, which the [County] has specifically joined in issue, have been satisfied." *Jackson v. Seaboard Coast Line R.R. Co.*, 678 F.2d 992, 1010 (11th Cir. 1982). It was impossible for Hadley to meet that burden: under this Circuit's caselaw, and the undisputed facts, the County is correct that Hadley failed to satisfy his administrative prerequisites.

It was possible, however, for Hadley to argue for a different out—the aforementioned equitable waiver. Indeed, the County's motion for summary judgment provided the appropriate tools to defeat the County's own argument: it cited to the statutory requirement, and to four separate cases that discussed equitable waivers of that requirement (and three of which discussed § 1601.28 and the confusion it engendered). Those leads in hand, a quick search surfaces many more.

In his response to the County's motion, Hadley did not cite to, discuss, distinguish, or address in any capacity, *any* of those sources. He made *no* attempt to demonstrate that he deserved an equitable waiver. He did not address the County's argument that he failed to satisfy his administrative prerequisites and did not argue that he did not *need* to satisfy that specific prerequisite for some other reason.

It was on him to do so. Hadley, as the plaintiff here, bore "the burden in arguing for equitable modification." *Ramsay v. Broward Cnty. Sheriff's Off.*, 2007 WL 6861073,

7

at *6 (S.D. Fla. May 24, 2007) (citing *Forehand v. Fla. State Hosp. at Chattahoochee*, 89 F.3d 1562, 15[69–70] (11th Cir. 1996)); *see also Braden v. Piggly Wiggly*, 4 F. Supp. 2d 1357, 1363 (M.D. Ala. 1998) ("[U]nder appropriate circumstances, the plaintiff will be excused from [statutory preconditions to suit] if the court's consideration of the equities so warrants it. The burden is on the plaintiff to show that equitable modification should apply . . . ." (citations omitted)). Hadley, by failing to address the County's argument, did not satisfy that burden, and so the Court ruled against him.

Then, Hadley asked the Court to reconsider. In doing so, he asserted the very arguments he did not assert during briefing on the County's motion for summary judgment. But he did not "articulate any reason for the failure to raise the issue at an earlier stage in the litigation." *O'Neal v. Kennamer*, 958 F.2d 1044, 1047 (11th Cir. 1992) (quotations and citation omitted). Such a motion "should not be used to raise arguments which could, and should, have been made before the judgment was issued." *Id.* (citation omitted).[1]

Of course, "[i]n our adversarial system of adjudication, we follow the principle of party presentation." *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020). "[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Id.* (quotations and citation omitted). That means "our system is designed around the premise that parties represented by competent

---

[1] Tellingly, in neither his first nor his second motion to alter (nor in his reply brief in support of his first motion) did Hadley explain the standard for granting a motion under Rule 59, nor did he make clear why or how he meets that standard. His motions contain nothing more than a bare assertion of arguments he could have, and should have, presented in response to the County's motion for summary judgment. (*See* Docs. 55, 60).

counsel know what is best for them, and are responsible for advancing the facts and argument entitling them to relief." *Id.* (alterations adopted) (quotations and citation omitted).

By contrast, consider what Hadley would have the Court do. To get past the County's argument, Hadley needed the Court to read the County's motion and arguments, and Hadley's brief in response (which, again, failed to address the County's pertinent argument). Then, the Court would need to read the cases the County (and *only* the County) cited, and research further authority applying those cases (since the County did *not* cite to any of the cases discussed above granting a waiver in a situation analogous to Hadley's here, which Hadley would need to point to and rely upon to secure his own waiver). Then, the Court would have to conclude that Hadley was likely entitled to a waiver, raise that argument itself, analyze it, and then find for Hadley—and against the County—on the Court's own argument, one the County had not faced and had no chance to respond to.

While the "party presentation principle is supple, not ironclad[,]" *id.*, the Court sees no extraordinary circumstance here that justifies taking over as Hadley's counsel. Hadley read the County's arguments, did not rebut them, then read the County's reply—which noted that the County's arguments on this point went unrebutted—and then, finally, did not request any chance to file a surreply. Instead, Hadley tried to raise his arguments for the first time in his motions to alter. The Court declines to let him do so.

Accordingly, and for good cause, it is

ORDERED that the Plaintiff's Renewed Rule 59 Motion to Alter or Amend Judgment (doc. 60) is DENIED.

Done this 29th day of June, 2022.

        /s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE